UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN SMITH,

       Plaintiff,

                                   Case No. 12-cv-15440
vs.                              HON. GERSHWIN A. DRAIN

CITY OF INKSTER, *et al.,*

       Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#9], DISMISSING PLAINTIFF'S STATE LAW CLAIMS AND CANCELLING MAY 8, 2013 HEARING

## I.      INTRODUCTION

Plaintiff, Kevin Smith, filed the instant action claiming that Defendants, the City of Inkster, the City of Inkster Policemen and Retirement System[1] and Hillard Hampton, Jr., discriminated and retaliated against him in violation of Title VII of the of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1983, by denying his claim for duty disability retirement benefits based on Plaintiff filing a complaint of race discrimination with the Equal Employment Opportunity Commission, filing a lawsuit in state court for race discrimination and for testifying on behalf of other employees in their lawsuit alleging race discrimination against Defendants. Plaintiff also brings state law claims under Michigan's Elliot Larsen Civil Rights Act, MICH. COMP. LAWS §

_____

[1] Plaintiff's Complaint improperly identified this party as the "City of Inkster Pension Board."

37.2101 *et seq.* ("ELCRA"), as well as for intentional infliction of emotional distress and for civil conspiracy.

Presently before the Court is Defendants' Motion for Summary Judgment, filed on January 21, 2013. This matter is fully briefed[2] and the Court concludes that oral argument will not assist in the resolution of Defendants' Motion for Summary Judgment. Accordingly, the Court will issue a decision on the briefs submitted and cancels the hearing set for May 8, 2013. *See* E.D. Mich. L.R. 7.1(f)(2).

## II.    FACTUAL BACKGROUND

Plaintiff is a police officer for the City of Inkster. Plaintiff has an exemplary record and has never been disciplined while employed as an officer and lieutenant in the police department. He has been recognized as solving the most homicides in the City of Inkster and was named Officer of the Year in 2001. Plaintiff claims that Defendants have a long-term pattern and practice of discriminating against Caucasian officers and employees with regard to the terms and conditions of employment within the police department.

According to Plaintiff, the pervasive nature of the racial discrimination has led to numerous lawsuits filed against the city and its police department, including an action initiated by Plaintiff in September of 2008, which resulted in a jury verdict of more than $700,000.00 in Plaintiff's favor. Additionally, Plaintiff has testified on behalf of other employees asserting race discrimination claims against the city and others. Lastly, on or about March 6, 2012, Plaintiff filed a complaint with the

---

[2] On April 15, 2013, Defendants filed a Motion to Strike Supplemental Brief arguing that Plaintiff already filed his response to Defendants' Summary Judgment motion, therefore his supplemental brief should be stricken. The Court agrees with Defendants, therefore Plaintiff's supplemental brief is stricken.

EEOC alleging racial discrimination and retaliation by the city.

Plaintiff claims that Defendants have retaliated and discriminated against him because of his lawsuit against the city, as well as due to the fact that he has testified in other employees' discrimination lawsuits, and lastly, based on Plaintiff filing a complaint with the EEOC. Specifically, Plaintiff argues that Hillard Hampton, Jr., the Mayor for the City of Inkster, as well as one of the Trustees on the Board of Trustees for the City of Inkster Policemen and Firemen Retirement System, has discriminated and retaliated against Plaintiff by conspiring to deny Plaintiff's request for duty disability retirement pension benefits, which he applied for shortly after the jury returned a verdict in his favor.

Plaintiff maintains that his treating physicians have determined that he is unable to return to his job due to heart related stress and physical strain caused by Defendants' discriminatory and retaliatory actions. However, Hillard has conspired to deny Plaintiff his benefits by requiring Plaintiff to go to other doctors, which Hillard knew would side with Hillard and would determine that Plaintiff does not meet the medical requirements for receiving duty disability retirement benefits. Plaintiff further claims that Defendants have delayed making a final decision on his request for duty disability retirement benefits or have denied his request for benefits outright, while granting the benefit claims of similarly-situated African American employees. Plaintiff claims that Hillard has stated that because Plaintiff filed a lawsuit against the city, he will never permit Plaintiff to receive his pension from the city.

## III.    LAW & ANALYSIS

### A.    Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*,

-4-

224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will

not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.

*Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably

find for the non-movant.  *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B.    Exhaustion of Administrative Remedies

The gist of Defendants' Motion for Summary Judgment is that Plaintiff failed to exhaust his

administrative remedies with respect to his claim for duty disability retirement benefits, thus the

Court lacks subject matter jurisdiction over this matter.  Defendants' argument is wholly without

merit.  Defendants argue that Plaintiffs only remedy is an appeal of the Board's decision denying

his claim for retirement benefits to the appropriate circuit court.  Here, Plaintiff has alleged a

violation of his rights under Title VII and §1983.  Under Title VII, proper exhaustion of

administrative remedies requires plaintiffs to obtain a right to sue letter from the EEOC.  *See Steiner*

*v. Henderson*, 354 F.3d 432, 437 (6th Cir.  2003) (noting that Congress established a comprehensive

administrative procedure for Title VII claims and that a lawsuit under Title VII may be brought

"only after these procedures have been exhausted and the plaintiff has received a 'right-to-sue' letter

. . . .").

Here, Plaintiff received his right to sue letter from the EEOC on November 20, 2012.

Defendants' argument that Plaintiff was required to file his discrimination claims in the state circuit

court is misplaced as Michigan Court Rule 7.105 has no relevance to Plaintiff's federal civil rights

claims. In any event, even if M.C.R. 7.105 were applicable here.

To the extent, Defendants maintain that Plaintiff has failed to state valid claims under Title

VII and §1983, such an argument similarly lacks merit.   Title VII's anti-discrimination provision

-5-

makes it "an unlawful employment practice for an employer to discriminate against any of its employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" allowed for by Title VII.  *See* 42 U.S.C. § 2000e-3(a).  In order to set forth a prima facie case of retaliation, Plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the government; (3) the government thereafter took a materially adverse action against Plaintiff or subjected him to severe and pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the materially adverse action.  *See Morris v.  Oldham County Fiscal Ct.*, 201 F.3d 784 (6th Cir. 2002).  This Court has previously determined that "refusing worker's compensation benefits and delaying [a] request for duty disability retirement benefits likely fit the definition of adverse action . . . ."  *Hearn v.  County of Wayne*, No.  11-15221, 2013 U.S. Dist. LEXIS 21965, *28 (E.D. Mich.  Feb.  19, 2013).

Similarly, 42 U.S.C. § 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."  42 U.S.C. § 1983.  "Because both Title VII and §1983 prohibit discriminatory employment practices by public employers," the United States Court of Appeals for the Sixth Circuit has explained "this court looks to Title VII disparate treatment cases for assistance in analyzing race discrimination in the public employment context under § 1983."  *Weberg v.  Franks*, 229 F.3d 514, 522 (6th Cir.  2000).

Plaintiff has sufficiently stated claims under Title VII and § 1983 by alleging that he has

-6-

previously filed a lawsuit based on Defendants' discriminatory practices, filed a complaint with the EEOC, as well as testified on behalf of other employees asserting claims of discrimination against the City of Inkster, the City of Inkster Policemen and Retirement System and Hillard Hampton, Jr. Further, he has plausibly set forth allegations that Defendants' adverse employment actions are causally connected to his protected activities.

### C.    State Law Claims

Although the Court may, under 28 U.S.C. § 1367, exercise supplemental jurisdiction over the state law claims ancillary to the relief sought, for the reasons set forth below, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Under the standard enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), and codified in 28 U.S.C. § 1367(c), this Court has broad discretion to exercise its supplemental jurisdiction.  Even where the district court "arguably ha[s] supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), the [district] court has discretion to decline to exercise its supplemental jurisdiction." *Cirasuola v. Westrin*, No. 96-1360, 1997 U.S. App. LEXIS 2242, *3 (6th Cir. April 18, 1997).  Section 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over related state claims if:

(1)    the claim raises a novel or complex issue of State law,

(2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)    the district court has dismissed all claims over which it has original jurisdiction, or

(4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The United States Supreme Court has stated that:

Our decisions have established that pendent jurisdiction 'is a doctrine of discretion,

> not of plaintiff's right,' and that district courts can decline to exercise jurisdiction
> over pendent claims for a number of valid reasons.
>
>                   *                          *                       *
>
> Accordingly, we have indicated that district courts should deal with cases involving
> pendent claims in the manner that best serves the principles of economy,
> convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.

*City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172-73 (1997) (internal citations and quotations omitted). In determining whether to exercise its supplemental jurisdiction, this Court must consider judicial economy, convenience, fairness and comity, and also avoid needless decisions of state law. *Id.* at 173; *Gibbs*, 383 U.S. at 726.

"[A] federal court with pendent jurisdiction should normally dismiss state claims without prejudice when it appears that the state issues 'substantially predominate' over the federal issues in terms of proof, scope, or comprehensiveness of the remedy sought." *Bodenner v. Graves*, 828 F.Supp. 516, 518 (W.D. Mich. 1993). In this instance, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims because his state claims substantially predominate over his federal claims. 28 U.S.C. § 1367(c)(2). Plaintiff's ELCRA, intentional infliction of emotional distress and civil conspiracy claims will either require elements of proof distinct from his federal claims, or cause a substantial expansion of the suit beyond that necessary and relevant to his federal claims.

While analysis of Plaintiff's state law ELCRA claim will overlap with the analysis for his claims under Title VII and §1983, there remains a potential for prolonged pre-trial practice, lengthened jury instructions and jury confusion that will impair judicial economy and trial convenience. While there will be some duplication of effort required by Plaintiff if he pursues his

-8-

claims in the state court, the Court concludes that any advantages to be gained by trying all his state claims together with his federal claims are outweighed by the potential for confusion of the issues and prolonged litigation proceedings. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice.

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [#9] is DENIED.

Defendants' Motion to Strike Supplemental Brief [#28] is GRANTED.

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff's state law claims are hereby DISMISSED without prejudice.

Plaintiff's claims under Title VII of the of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1983 remain.

SO ORDERED.


Dated: May 7, 2013                              /s/Gershwin A Drain_____
                                                GERSHWIN A.  DRAIN
                                                UNITED   STATES   DISTRICT   JUDGE