UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN SMITH,

              Plaintiff,

                                        Case No. 12-cv-15440
                                        Honorable Gershwin A. Drain

v.

CITY OF INKSTER, *et al.*,

              Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS CITY OF INKSTER'S AND MAYOR HILLIARD HAMPTON'S MOTION FOR SUMMARY JUDGMENT BASED ON RES JUDICATA [#65], DENYING DEFENDANTS CITY OF INKSTER'S AND MAYOR HILLIARD HAMPTON'S MOTION FOR SUMMARY JUDGMENT DISMISSING ALL CLAIMS BECAUSE THERE IS NO CREDIBLE EVIDENCE OF AN ADVERSE ACTION [#68] AND GRANTING IN PART AND DENYING IN PART DEFENDANT BOARD OF TRUSTEES MOTION FOR SUMMARY JUDGMENT [#70]**

**I.      INTRODUCTION**

On December 11, 2012, Plaintiff Kevin Smith filed the instant action against the City of Inkster ("City"), Mayor Hilliard Hampton, Jr. ("Hampton") and the Board of Trustees of the Policemen and Firemen Retirement System of the City of Inkster ("Board"). Plaintiff brings claims of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and retaliation under 42 U.S.C. § 1983. Plaintiff alleges that Defendants have intentionally delayed granting his request for duty disability retirement benefits because of his Caucasian race and in retaliation for filing his own action against the City for reverse race discrimination.

Presently before the Court is the City's and Hampton's Motion for Summary Judgment based on Res Judicata and Motion for Summary Judgment because there is No Credible Evidence that they

Took Any Adverse Action Against Smith Relative to His Application for a Disability Pension, both filed on January 10, 2014. Also, before the Court is the Board's Motion for Summary Judgment, likewise filed on January 10, 2014. These matters are fully briefed and a hearing was held on June 2, 2014. For the reasons that follow, the Court denies the City's and Hampton's Motions for Summary Judgment and grants in part and denies in part the Board's Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

Plaintiff was employed as a police officer by the City commencing in 1995. On December 2, 2002, Plaintiff suffered two heart attacks and was off from work until March 31, 2003. Plaintiff was hospitalized for four or five days and surgery was performed to implant two stents in his heart. Shortly after Plaintiff returned to work in March of 2003, he was made "acting" Detective Lieutenant due to the fact that a number of employees within the department had recently retired.

In February of 2005, Lieutenant Thomas Diaz, a Hispanic male, filed a lawsuit against the City alleging that he was denied a promotion to Commander and Deputy Chief based on his race. Plaintiff was deposed for the *Diaz* lawsuit and provided favorable testimony for Diaz's claims. In February of 2007, Smith testified at Diaz's trial consistent with his deposition testimony. Plaintiff claims that after the jury returned a verdict in favor of Diaz, he experienced trouble within the department. Specifically, he claims that he could no longer get people trained, bills paid or people reassigned or transferred.

In June of 2008, the City's Chief of Police, Gregory Gaskin, decided to reorganize the police department. Eleven police officers were reassigned to other departments and the narcotics

department was disbanded.  On June 19, 2008, Plaintiff received a memorandum from Gaskin informing him that he was being reassigned from the detective bureau to the road bureau.  Plaintiff would still be a Lieutenant and his pay would not be impacted by the reassignment.  Plaintiff called in sick the following day because of stress and he never returned to work.  Plaintiff claims the memorandum was very upsetting because his reassignment to road patrol meant he would lose his office, an assistant and a daytime schedule.

On June 25, 2008, Plaintiff applied for workers' compensation benefits, describing his injury as "work related stress" with an injury date of June 19, 2008.  The City disputed Plaintiff's alleged injury was work related, thus a trial commenced on April 10, 2010.  The Magistrate Judge determined that Plaintiff was totally disabled because of a work-related injury from June 18, 2008 through November 30, 2008.  The Magistrate Judge awarded Plaintiff wage loss benefits for the five-and-a-half month period.  Plaintiff appealed this decision, however he later voluntarily withdrew his appeal.

On September 16, 2008, Plaintiff filed an action for race discrimination and violation of Michigan's Whistleblower Protection Act in the Wayne County Circuit Court ("WCCC") against the City, Chief Gaskin and other employees of the City.  The case went to trial, during which Plaintiff presented an expert's analysis of his alleged damages, including "lost earnings and pension."  The jury returned a verdict in Plaintiff's favor, and on March 30, 2011, the court entered a stipulated judgment in Plaintiff's favor in the amount of $825,000.00.

The City Charter provides for the administration of the retirement system by the Board.  The retirement system is a charter-based, governmental defined benefit plan recognized by the Internal Revenue Service as a qualified trust.  The retirement system provides benefits for all police and fire employees of the City.  The Board consists of five trustees: one member appointed by the Mayor,

one member appointed by the council, one member appointed by the fire force, one member appointed by the police force and one member appointed by the other four members. Hampton has been a trustee on the Board and he represents one out of the five total votes.

Sometime in January of 2011, Plaintiff requested a duty disability pension from the retirement system. On May 12, 2011, Trustee Chris Crawley presented three letters from Plaintiff's physicians, Dr. Patel, Dr. Mistry and Dr. Feurino to the Board in support of Plaintiff's application for benefits. The Board sent Plaintiff to be evaluated by Dr. Gerald Levinson, a cardiologist. Dr. Levinson opined that Plaintiff was not totally and permanently disabled because of a heart condition. Dr. Levinson further concluded that Plaintiff should be examined by a psychiatrist for job-related stress and anxiety.

On August 23, 2011, Plaintiff was evaluated by Dr. Harvey Ager. There is a dispute in the record as to whether Defendants specifically asked for Dr. Ager or whether they simply asked for a psychiatrist's examination. On August 26, 2011, Dr. Ager provided his report wherein he concluded that Plaintiff had the capacity to work as a police officer, "if not for the City of Inkster, for some other municipality." The Board voted and denied Plaintiff's request for a duty disability pension. The Board decided to send Plaintiff to a third physician pursuant to the procedure set forth in the Charter when there is a dispute over entitlement to benefits. Defendants maintain that Plaintiff has refused to participate in the selection of a third physician which would allow the Board to make a final determination on Plaintiff's eligibility for pension benefits. Conversely, Plaintiff asserts that his doctor has repeatedly tried to get in touch with Dr. Ager in order for the two physicians to select a third physician to examine Plaintiff, yet Dr. Ager has never responded to Plaintiff's doctor.

## III.    LAW & ANALYSIS

-4-

### A.      Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First*

*Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

###### B.      City's and Hampton's Motions for Summary Judgment

####### 1.      Res Judicata

In the City's and Hampton's first Motion for Summary Judgment,[1] they argue that Plaintiff's claims are barred by his WCCC case. Defendants maintain that Plaintiff's entitlement to a duty disability pension could have been resolved in the WCCC case, thus Plaintiff's claims are subject to dismissal based on the doctrine of res judicata. A claim will be barred by prior litigation if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies;" (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; (4) an identity of the causes of action. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997).

The Court disagrees with Defendants. Plaintiff's present action rests on facts that occurred after the conclusion of his WCCC case. Plaintiff's current claims did not become ripe until the summer of 2011 when his request for a duty disability was denied by the Board. As such, Defendants arguments fail on the third and fourth elements of the res judicata test. *Kane v. Magna*

---

[1] The Court notes that Defendants improperly filed more than one Motion for Summary Judgment without seeking leave of court. *See* E.D. Mich. L.R. 7.1(a)(2) ("A party must obtain leave of court to file more than one motion for summary judgment.")

*Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995); *see also Sanders v. Confectionary Prods.v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992) ("Identity of causes of action means an identity of the facts creating the right of action and of the evidence necessary to sustain each action."). In *Kane*, the court concluded in relevant part:

> The proposition that the Kanes' failure to raise their assigned indemnity claim in the Pennsylvania action precludes them from doing so now founders on the third and fourth elements. The Kanes did not acquire the indemnity claim they now assert until Triumph assigned the claim to them in September 1993, eighteen months after the Pennsylvania case was closed. Simply put, the Kanes could not have asserted a claim that they did not have at the time.

*Id.* Based on the foregoing considerations, the Court will deny the City's and Hampton's Motion for Summary Judgment based on Res Judicata.

### 2.    Retaliation

In their second Motion for Summary Judgment, the City and Hampton first argue that Plaintiff has failed to demonstrate that there is a genuine issue of material fact on Plaintiff's retaliation claim. Specifically, Defendants maintain that there is no evidence Hampton interfered with the selection process for the third physician's examination required by the Board.

In order to establish his prima facie retaliation claim, Plaintiff must demonstrate: (1) he engaged in a protected activity, (2) the employer knew about the protected activity, (3) the employer took an adverse employment action against the employee, and (4) there was a causal connection between the protected activity and the adverse action. *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004). Once Plaintiff establishes a prima facie case of retaliation, Defendants can demonstrate a legitimate reason for the adverse employment action. *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). Plaintiff must then show that the proffered reason for the action was pretext for retaliation. *Id.*

-7-

Here, Plaintiff has demonstrated that he engaged in protected activity by filing the WCCC case alleging race discrimination, of which Defendants were aware. He also has shown an adverse employment action because "material loss of benefits" constitutes an adverse employment action. *See Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). "A plaintiff may establish the requisite causal connection either directly or indirectly." *Stroud v. New York City*, 374 F.Supp.2d 341, 349 (S.D.N.Y. 2005). A plaintiff may show causation indirectly by demonstrating the "protected activity was followed closely by discriminatory treatment." *Id.* Additionally, a plaintiff may show causation indirectly "through other evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Id.* at 350. A plaintiff can establish causation directly "through evidence of retaliatory animus directed against plaintiff by defendant." *Id.*

Here, contrary to Defendants' arguments, there is direct evidence of retaliatory animus directed against Plaintiff by Hampton. Specifically, Defendant Hampton has told numerous City employees that he would not allow Plaintiff to receive his duty disability pension because he sued the City in the WCCC case. Hampton allegedly told Board member Barry O'Bryan: "He sued the City, he's not getting shit." The City's former City Manager, Ann Capela, has provided a declaration stating in relevant part:

> [I]f Kevin Smith had not sued the City of Inkster previously, he would have received his pension. As I understand and am aware, Kevin Smith sued the City of Inkster and alleged race discrimination and prevailed at trial. Mayor Hampton told me directly that he did not want Kevin Smith to get his pension because he sued the City of Inkster previously. Mayor Hampton controlled the City of Inkster Pension Board at the time Kevin Smith requested his pension from the City, and controlled everything that went on in the City of Inkster.
>
> *                             *                             *
>
> In my opinion, based upon seeing Mayor Hampton micro-manage every aspect of the City of Inkster and me seeing him give staff direction all the time, I am of the opinion that Mayor Hampton gave the directive as to which doctor Kevin Smith was

told he had to see.

\*                                        \*                                        \*

[Hampton] was adamant that he (or the City of Inkster) would not settle and that he
would not give Mr. Smith his pension, and that he would use all of his influence to
prevent Kevin Smith from getting his pension.

*See* Dkt. No. 80, Ex. 1 at ¶¶ 3-4.

Furthermore, the relationship between the City and Hampton are such that an unofficial
custom can be established by showing Hampton encouraged or ratified the pattern and practice of
discriminating against non-African American employees. *See Braverman v. City of Detroit*, No. 99-
cv-74634, 2001 WL 558236, \*5 (E.D. Mich. Mar. 23, 2001) (citing *Marchese v. Lucas*, 758 F.2d
181, 188 (6th Cir. 1985), cert. denied, 480 U.S. 916 (1987)).  "If it is established in an official
capacity action . . . that the supervisor 'either encouraged the specific incident of misconduct or in
some other way directly participated in it,' liability may be imposed upon the official, as well as the
municipality." *Braverman*, 2001 WL 558236, at \*5 (citing *Poe v. Hayden*, 853 F.2d 418, 429 (6th
Cir. 1988).

As to Defendants' argument that Plaintiff's failure to cooperate in the selection of a third
physician is the reason the Board has declined to award benefits, there are questions of fact as to
whether this reason is merely pretext for discrimination.  The record shows a disputed issue of fact
concerning whether the Board conspired to have Dr. Ager examine Plaintiff knowing that Dr. Ager
would conclude Plaintiff is not permanently disabled.  The Board's attorney admitted during her
deposition that the Board engaged in de-selecting certain doctors to conduct the third physician's
examination of Plaintiff.  The record also suggests that the City of Inkster specifically requested that
Plaintiff be seen by Dr. Ager, despite the City's and Hampton's claims that this did not occur.
Lastly, there is evidence that the Board's decision to require a third examination is not its usual

course of practice in determining eligibility for duty disability benefits.   Plaintiff has presented evidence that African-American police and fire employees have been awarded their duty disability pensions without demonstrating entitlement to such benefits with documented medical records, yet the Board has imposed different requirements for awarding benefits to Plaintiff, a Caucasian officer who previously filed a discrimination lawsuit against the City.

Moreover, there is record evidence that employees who did not file discrimination lawsuits against the City received their duty disability pension.  For example, Christopher Crawley, an African-American fire employee, was granted a duty disability pension at the age of forty.  Mr. Crawley did not have to show any medical records to substantiate his claims of disability.  As such, there are numerous material questions of fact remaining on Plaintiff's retaliation claim.  Therefore, the City and Hampton are not entitled to judgment in their favor on this claim.

### 3.    Title VII

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).  Where there is only circumstantial evidence of race discrimination, a plaintiff must use the *McDonnell Douglas* burden shifting analysis to establish a prima facie case of discrimination by showing: (1) that he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the job; and (4) he was treated differently from similarly situated employees from a non-protected class or replaced by a person not a member of her protected class.  *McDonnell Douglas v. Green, 411 U.S. 792 (1973)*.

If plaintiff proves a prima facie case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision.  *McDonnell*

*Douglas*, 411 U.S. at 802. Even though the burden of going forward is on the defendant once a plaintiff has established a prima facie case, the ultimate burden of persuasion never shifts from the plaintiff. *Id*. Once the employer carries this burden, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id*.; *Ang v. Proctor & Gamble Co.*, 932 F. 2d 540, 548 (6th Cir. 1991). The plaintiff may meet this burden by showing: 1) that the stated reasons had no basis in fact; 2) that the stated reasons were not the actual reasons; or 3) that the stated reasons were insufficient to explain the employer's action. *Wheeler v. McKinley Enters*., 937 F. 2d 1158, 1162 (6th Cir. 1991).

Alternatively, a plaintiff can establish a prima facie case by presenting credible, direct evidence of discriminatory intent. *Terbovitz v. Fiscal Court of Adair County*, 825 F. 2d 111 (6th Cir. 1987); *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582, note 4 (6th Cir. 1992). The *McDonell Douglas* test is inapplicable when the plaintiff presents direct evidence of discrimination. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *see also, LaPointe I*, 8 F. 3d at 379 ("Direct evidence of discrimination allows a plaintiff to proceed without meeting the requirements of a prima facie case set forth in *McDonnell Douglas*.") "Direct evidence and the *McDonnell Douglas* formulation are simply different paths by which to resolve the ultimate issue of defendant's discriminatory intent." *Blalock v. Metals Trades, Inc., 775 F. 2d 703, 707 (6th Cir. 1985); see also, Harrison v. Olde Financial Corp.*, 225 Mich. App. 601, 610; 572 N.W. 2d 679 (1997) (In an ELCRA action the court finds that the trial court erred in granting summary judgment using *McDonnell Douglas* framework because the plaintiff presented direct evidence of discriminatory animus). Direct evidence is evidence which, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor. With direct evidence, the existence of unlawful

discrimination is patent." *Kresnak v. City of Muskegon Heights*, 956 F. Supp, 1327, 1335 (W.D. Mich. 1997) (citing *Bartlik v. United States Dep't of Labor*, 73 F. 3d 100, 103 n. 5 (6th Cir. 1996)). "Direct evidence of discrimination may consist of statements made by a decision maker which show an illegal motive for employment decisions." *Id.*

Here, there is direct evidence of discrimination by Hampton which suggests an illegal motive was behind the decision to interfere with the selection of the third examining physician, as well as the decision to deny Plaintiff's disability pension. Additionally, there is evidence in the record of a pattern and custom of discriminating against non-African American police officers. Similar to Plaintiff's retaliation claim, there are numerous issues of material fact remaining on Plaintiff's Title VII claim. As such, the Court denies the City's and Hampton's request for judgment in their favor as to Plaintiff's Title VII claim.

### C.    The Board's Motion to Dismiss and/or for Summary Judgment

#### 1.    Subject Matter Jurisdiction

The Board first argues that this Court lacks subject matter jurisdiction pursuant to either the *Burford* abstention doctrine or the primary-jurisdiction doctrine because Plaintiff's claim for unpaid pension benefits is a state court issue. However, Defendant provides no cases where a court relied on *Burford* abstention under similar factual circumstances, nor does Defendant provide any argument in support of abstention. In any event, *Burford* abstention is inapplicable to suits seeking damages. *See Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 662 (6th Cir. 2002); *Superior Beverage Co. v. Schieffelin & Co.*, 448 F.3d 910, 914 (6th Cir. 2006). In the instant case, Plaintiff is seeking damages, therefore the Board's argument concerning *Burford* abstention is unavailing.

Similarly, the primary jurisdiction abstention doctrine does not appear applicable under the

circumstances. "The doctrine of primary jurisdiction arises when a claim is properly cognizable in court but contains some issue within the special competence of an administrative agency. When the doctrine is applicable, court proceedings are stayed so as to give the parties reasonable opportunity to 'refer' the matter to an agency seeking an administrative ruling." *United States v. Haun*, 124 F.3d 745, 749 (6th Cir. 1997). The Board is not an administrative agency, thus this argument likewise lacks merit.

### 2.    Title VII

The Board next argues that Plaintiff's Title VII claim fails because the Board is not Plaintiff's employer under Title VII. Plaintiff responds that the Board can still be held liable because it acted as an agent of the City. The Board asserts that Plaintiff has provided no evidence that the Board acted as an agent of the City.

Title VII "primarily govern[s] relations between employees and their employer, not between employees and third parties." *City of Los Angelos v. Manhart*, 435 U.S. 702, 718 n.33 (1978). However, an employer cannot escape Title VII liability by delegating discriminatory programs to third parties. *Id.* Title VII specifically applies to "any agent" of a covered employer. *Id.*

The law in this area is rather sparse within the Sixth Circuit. *See Satterfield v. State of Tenn.*, 295 F.3d 611, 617 (6th Cir. 2002) ("[T]his court has not comprehensively explained the legal theories by which to identify 'employers' under the Civil Rights Acts."). However, the Sixth Circuit has noted that "[f]ederal courts have construed the statutory language [of Title VII] to include, as employers, employers' agents and those to whom employers have delegated responsibility for employee compensation." *Peters v. Wayne State Univ.*, 691 F.2d 235, 237 (6th Cir. 1982), *judgment vacated and case remanded on different grounds by*, 463 U.S. 1223 (1983).

In *Peters*, the court determined that an independent administrator of pension and retirement

benefits for university employees was not an employer under Title VII.  In so concluding, the court held that:

> Obviously Teachers Annuity does not 'employ' the plaintiffs in the conventional sense of the word. Neither does Wayne State retain Teachers Annuity as an agent or delegate to it any aspect of employee compensation.  On the contrary, Wayne State determines the eligibility requirements for participation in the Teachers Annuity plans and sets the contribution levels for itself and its employees.  Teachers Annuity's responsibility is limited to management of the retirement fund and disbursement of individual annuities.  Furthermore, Wayne State exercises no control over Teachers Annuity, otherwise essential to a principal agent relationship.

*Id.; see also Pappas v. Bethesda Hosp. Assoc.*, 861 F.Supp. 616, 619 (S.D. Ohio 1994) ("Applying *Peters* to the instant case, the Court concludes that the administrator of employee benefits for a statutory employer under the ADA is not an agent of that employer and therefore may not be held liable for benefits that discriminate based on disability."); *Pokorney v. Miami Valley Career Technology Center Sch. Dist.*, No.  C-3-94-247, 1995 U.S. Dist.  LEXIS 22182 (S.D. Ohio Feb. 14, 1995) ("[C]ongress did not intend that benefit providers would be directly liable under the ADA to employees of the employer with whom the benefit provider contracts.  Rather, benefit providers are to be held accountable (through contract) to employers, who in turn, are held accountable (by the statute) to employees").

Moreover, the Sixth Circuit has held that "[a]n agent within the context of the ADEA and other employment discrimination statutes must be an agent with respect to employment practices." *Swallows v. State of Tenn.*, 128 F.3d 990, 996 (6th Cir.  1997).  Here, Plaintiff provides no evidence suggesting that the Board is an agent of the City of Inkster.  There is nothing in the record to suggest that the Board has any control over Plaintiff's job performance nor any ability to control Plaintiff's access to employment opportunities.  *See Satterfield*, 295 F.3d at 617 ("[A]n employer/employee relationship is identified by considering: 'the entire relationship, with the most important factor

-14-

being the employer's ability to control job performance and employment opportunities of the aggrieved individual.'") (citing *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 319 (6th Cir. 2001)).

As such, based on the foregoing considerations, the Board is entitled to judgment in its favor on Plaintiff's Title VII claim because the Board is not an agent of the City of Inkster and, therefore cannot be liable under Title VII.

### 3.   42 U.S.C. § 1983

The Board is not entitled to dismissal of Plaintiff's § 1983 claim. There are questions of material fact remaining as to this claim asserted against the Board, therefore the Court will deny the Board's motion in part. There is evidence suggesting that the Board acts merely as a "rubber stamp" to the City's, and more specifically, Hampton's directives concerning the award of duty disability benefits.

There is evidence that Hampton participated in, and encouraged the Board's conduct in de-selecting certain physicians for the third examination of Plaintiff. The City's former manager has testified that Hampton was involved in every aspect of city management and that he stated he would do everything within his power to prevent Plaintiff from receiving his duty disability benefits because Plaintiff previously sued the City for reverse race discrimination. There is also evidence that the Board grants African-American employees' requests for duty disability benefits without requiring documented, medical proof of disability, whereas the Board has proceeded differently in determining Plaintiff's entitlement to pension benefits.

As such, there are questions of fact as to whether the Board has ratified the City's and Hampton's unofficial custom and policy of discriminating against non-African American employees and retaliating against employees for engaging in protected conduct. The Court will deny the Board's request for judgment in its favor on Plaintiff's retaliation claim.

-15-

IV.    **CONCLUSION**

For the foregoing reasons, the City's and Hampton's Motions for Summary Judgment [#65, #68] are DENIED.  The Board's Motion for Summary Judgment [#70] is GRANTED IN PART and DENIED IN PART.   Plaintiff's Title VII claim is dismissed as to the Board only.

SO ORDERED.


Dated: November 6, 2014                    /s/Gershwin A Drain_____
                                           GERSHWIN A. DRAIN
                                           UNITED   STATES   DISTRICT   JUDGE